IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF OHIO

WESTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF:<br>A silver Apple iPhone, Model A1688, FCC ID: BCG-E2946A with a black and orange colored phone case | CASE NO. __1:19-MJ-00655__<br><br>**Magistrate Judge Bowman**<br><br>**FILED UNDER SEAL** |

### AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

1. I, Mark Bohan, being duly sworn, declare and state:

2. I am an investigative or law enforcement officer of the United States within the meaning of Section 2510 (7) of Title 18, United States Code, that is, an officer of the United States who is empowered by the law to conduct investigations of, and to make arrests for, the offenses enumerated in Title 18, United States Code, Section 2516.

3. I am a Corporal with the Hamilton County Sheriff's Department, and have been so employed since 1994. I have completed basic law enforcement training through the Scarlet Oaks Police Academy in Sharonville, Ohio and have received extensive additional training in criminal investigations throughout my law enforcement career to include training in offenses involving controlled substances.

4. Facts set forth in this affidavit are based on personal knowledge derived from my participation in this investigation and upon information presented to me by other law enforcement officers involved in this case. The sources of my information and beliefs include:

1

a. Oral and written reports about this and other investigations which I have received from Task Force Officers within the Hamilton County Heroin Task Force and other law enforcement authorities;

b. Physical surveillance conducted by Task Force Officers of the Hamilton County Heroin Task Force and/or other law enforcement authorities and which have been reported to me either directly or indirectly;

5. By virtue of my involvement in these investigations, I have become familiar with the various means and mechanisms used by narcotics traffickers to import and distribute controlled substances and to remain at large without being detected by law enforcement. I am familiar with the fact that drug traffickers make tremendous profits through drug trafficking, and require large amounts of currency to operate surreptitiously. In this regard, I have obtained and executed numerous search warrants pursuant to which I have seized ledgers, notebooks, papers, and other related record-keeping instruments, all of which have been used to record multiple narcotics and related money laundering transactions, telephone books, diaries, invoices, beepers, cellular telephones and correspondence, all of which have contained evidence of narcotic trafficking and money laundering violations.

6. During the course of my law enforcement career I have conducted and participated in the investigation of numerous criminal offenses, including those involved in the current investigation. I have participated in hundreds of investigations including but not limited to: Aggravated Murder, Involuntary Manslaughter, Aggravated Robbery, Rape, Child Molestation, Burglary, Drug Trafficking and Theft which resulted in the successful prosecution of defendants in the State and Federal Courts. These investigations have also included the unlawful importation, possession with intent to distribute and distribution of

illegal substances, the related money laundering instruments, the conducting of monetary transactions involving the proceeds of specified unlawful activities, and conspiracies associated with criminal narcotics offenses. These investigations during my career, which have resulted in the seizure of narcotics, arrests of suspects, their prosecution, conviction and the seizure of large amounts of U.S. currency; and have involved: the use of confidential informants; undercover agents; toll records; physical surveillances and the execution of search warrants. I have planned, participated in and supervised the execution of numerous search warrants authorizing the search of drug traffickers, locations associated with drug traffickers and their co-conspirators, such as residences, businesses, storage facilities, outbuildings, safety deposit boxes, and vehicles. I have testified in grand jury proceedings; and have written reports and analyzed documents in the course of investigations.

7. I have been involved in numerous post-arrest interviews of individuals, interviewed defendants in conjunction with post-arrest proffers, interviewed confidential informants and other non-defendant individuals with knowledge of illegal drug trafficking. During such interviews and discussions with other experienced agents, I have become familiar with the day-to-day operations of distributors and transporters of controlled substances. I have gained knowledge regarding the various methods, techniques, codes, and/or jargon used by illegal drug traffickers in the course of their criminal activities, including the use of firearms to protect their narcotics related activities and of cellular telephones, pagers, and personal digital assistants to facilitate communications while attempting to avoid law enforcement scrutiny.

8. As a result of my participation in these, and other activities, I have gained particular knowledge in the use of undercover agents, confidential informants, physical surveillance, consensual recordings, investigative interviews, mail covers, garbage searches, GPS tracking devices, pole-mounted cameras, grand jury subpoenas and federal and state search warrants.  In addition to using these investigative techniques, I have been required to analyze information resulting from traditional record sources, such as financial records, utility records, and telephone toll and subscriber records, as well as nontraditional record sources, such as the informal ledgers routinely maintained by narcotics traffickers listing amounts of drugs received from sources and distributed to customers and the amounts of money received from customers and owed to sources, commonly referred to as pay-owe sheets. I have also gained experience in the identification and collection of drug and non-drug evidence.

9. By virtue of my training and experience, through my conversations with and review of reports from other experienced agents and officers who conduct drug investigations, I have become familiar with the methods used by drug traffickers to import, transport, store, safeguard, remit and/or launder drug proceeds; and the methods used by drug traffickers to collect, transport, store, safeguard, remit and/or launder drug proceeds; and the methods used by drug traffickers to obtain and utilize telephones, pagers, computers, and other devices in order to communicate with each other; and the jargon and/or codes commonly used when they refer to drugs and/or drug proceeds.  As a result of my experience, I have become familiar with the day-to-day operations and the various tools, methods, trends, paraphernalia and related articles used by various traffickers in their efforts to manufacture, possess, import, conceal, package, use and distribute controlled substances.

10. I have also had discussions with other law enforcement officers and other cooperating individuals about the packaging and preparation of narcotics, methods of operations, and security measures which are often employed by narcotics traffickers. I have examined documentation of various methods in which illicit drugs are smuggled, transported, and distributed. Through these investigations, I have gained expertise in the use of a variety of law enforcement techniques, including the utilization of confidential informants and undercover agents, the use of physical surveillance techniques, and various other types of electronic surveillance techniques, such as body wires and transmitters. Additionally, I have gained knowledge and expertise in the utilization of telephone toll analysis; the analysis of traditional types of records, including financial records, telephone records and utility records; and nontraditional records, including records routinely maintained by narcotics traffickers listing amounts of drugs delivered and amounts of money owed (pay-and-owe sheets). I have also gained knowledge and expertise in the collection and identification of drug evidence and the analysis and interpretation of taped conversations obtained by the methods detailed above.

11. I am one of several law enforcement officers conducting an ongoing investigation into the drug-trafficking activities of Larry COLLINS, hereafter "COLLINS". The facts contained in this affidavit are based upon personal knowledge, information from other Task Force Officers with the Hamilton County Heroin Task Force, Special Agents with the DEA, officers from other law enforcement agencies, cooperating sources that have provided reliable information to me, and checks of computerized indices and public records.

12. I have not included every fact revealed thus far in this investigation; rather, the facts are tailored to show that probable cause exists to search one (1) cellular telephone. The

telephone is described as follows: **A silver Apple iPhone, Model A1688, FCC ID: BCG-E2946A with a black and orange colored phone case.**

13. I assert that probable cause exists to search the cellular telephone recovered from Larry COLLINS on September 5, 2019; and that the cellular telephone was being utilized to facilitate illegal drug trafficking in violation of Title 21 of the United States Code Sections 846 and 841 (a)(1).

14. Due to the changing nature of cellular devices and the fact that many phones have internal batteries and internal data collection/storage, a more in depth description of the cellular device is not possible. Many cellular devices have internal storage of their Model Number, Serial Number, IMEI, ICC ID, MEID, SEID and/or cellular telephone number and other identifiable information. Therefore a search warrant is necessary to get inside the cellular device in order to obtain more identifiable information for this cellular device other than what is readily visible on the exterior of the cellular device.

THE ITEMS TO BE SEIZED:

15. The items to be seized are evidence of violations of Title 21, United States Code, Sections 846 and 841 (a)(1), specifically:

    a. Any and all stored telephone numbers;

    b. Any and all text messages, to include incoming, outgoing, saved, deleted and drafts;

    c. Any and all emails, sent, received, deleted, draft and/or saved;

    d. Any and all voicemails;

    e. Any and all photographs, electronic images, video recordings and/or images saved and/or deleted on the cellular device;

    f. Any and all data retrieved from Apps on the device;

    g. Any and all entries made in a calendar and/or notebook feature;

    h. Any and all personal numbers associated with the cellular device to include the telephone number, push-to-talk number, make, model, carrier, ESN, IMEI, ICCID, MEID, SEID and/or IMSI;

    i. Any and all other telephone numbers and/or communications, associated with illegal activities and/or associates in drug trafficking and money laundering activities;

    j. Any and all location data information associated with the cellular device;

    k. Any and all electronic information and or data stored within the device or associated with an electronic or cloud based account tied to the device;

16. The information provided in this affidavit is based upon my personal knowledge and information received from other law enforcement officials and confidential sources involved in this investigation as set forth below.

### PROBABLE CAUSE FOR ISSUANCE OF SEARCH WARRANT:

1. On or about, May 18th 2019, the Hamilton County Heroin Task Force (HCTF) was contacted by the Cincinnati Police Department (CPD) about a suspected heroin overdose death of a subject by the name of Vernon WARNER. Task Force Officers (TFO) Bohan and Herrmann responded to the scene. WARNER was found deceased on the bathroom floor of the apartment. Per CPD officers on scene, the apartment tenant, who will be identified as a Confidential Source (hereafter "CS") returned to the apartment shortly after they arrived. The CS was returning from the hospital after he/she overdosed earlier in the evening. The CS stated that he/she and WARNER smoked what they thought was crack cocaine and that a subject known only to the CS as "LARRY", was the distributor of the crack cocaine. The CS had a history of purchasing substances that the CS believed to be crack cocaine from "LARRY", for the last 6 months. The CS provided a phone of 513-410-3137 that the CS uses to contact "LARRY".

7

2. The CS described "LARRY" as a male black in his late-forties to early-fifties, and is in a wheel chair. The CS also stated that "LARRY" lives in the apartment building directly across from his/hers.

3. During the course of this investigation, agents have utilized the CS for information regarding the identification of "LARRY" and to conduct controlled purchases of suspected scheduled controlled substances from "LARRY". The information provided by the CS has proven to be accurate and reliable and has been verified by your affiant independently. For each controlled drug purchase where the CS was utilized, law enforcement met with the CS at a secure location prior to the deal, searched the CS for contraband and unauthorized funds, and none were ever found. Audio and/or video recording devices were worn by the CS during each transaction described below.

4. On May 21, 2019, the CS successfully purchased approximately 2.3 grams of a substance purported to be crack cocaine, from "LARRY" for $20.00. The CS called "LARRY" prior to the deal and was directed to walk over to his apartment, which was positively identified as 860 Beecher Street, apartment #2 where the drug transaction took place. The substance purchased by the CS on May 21, 2019, was sent to the Hamilton County Coroner's laboratory for testing and tested positive for the presence of cocaine.

5. On May 21, 2019, TFO Herrmann contacted brother officer, Candice Roper-Issa, who is a community officer in the area of Beecher Street to see if she knows "LARRY".

6. On May 22, 2019, Officer Roper-Issa contacted TFO Herrmann with the identity of "LARRY". She stated she was driving on Beecher Street and saw a male in a wheelchair in front of 860 Beecher Street so she stopped to talk with him. The subjected identified himself as LARRY COLLINS and gave his as address of 860 Beecher Street, apartment

#2. The CS was shown a photo of COLLINS and positively identified COLLINS as the subject known to him/her as "LARRY".

7. Through subpoenas to Duke Energy it was confirmed that COLLINS is the listed utility holder at 860 Beecher Street, Apartment #2, Cincinnati, Ohio 45206.

8. COLLINS has a criminal history that includes a conviction for Drug Trafficking, as well as convictions for Carrying Concealed Weapons and having Weapons Under Disability, for possessing guns with felony convictions.

9. On May 28, 2019, agents conducted a second undercover drug purchase from COLLINS. Prior to the deal, surveillance was established on 860 Beecher Street. The CS then placed a call to COLLINS to arrange a drug buy and was directed to walk over to his apartment. The CS entered 860 Beecher Street Apartment #2 and met with COLLINS. The CS gave COLLINS $20 and COLLINS provided the CS with a plastic baggie containing a substance that COLLINS purported to be crack cocaine. The substance the CS purchased from COLLINS was sent to the Hamilton County Coroner's Office laboratory where it was analyzed and tested positive for the presence of cocaine.

10. On June 5, 2019, agents conducted a third undercover drug purchase from COLLINS. Prior to the deal, surveillance was again established on 860 Beecher Street and surveillance observed COLLINS outside in front of the above address. The CS placed a call to COLLINS and was directed to come over to his apartment. The transaction took place on the sidewalk in front of COLLINS address. The substance provided to the CS by COLLINS was sent to the Hamilton County Coroner's Office laboratory for analysis which tested positive for the presence of cocaine.

11. On June 13, 2019, agents conducted a fourth undercover drug purchase from COLLINS. Prior to this drug transaction, surveillance was again established on 860 Beecher Street. The CS then placed a call to COLLINS to arrange a drug buy and was directed to walk over to his apartment. The CS entered 860 Beecher Street Apartment #2 and met with COLLINS. The CS gave COLLINS $20 and COLLIINS provided the CS with a plastic baggie containing a substance that COLLINS purported to be crack cocaine. The substance provided to the CS by COLLINS was later sent to the Hamilton County Coroner's Office laboratory for analysis, which tested positive for the presence of cocaine.

12. On July 26, 2019, TFO Bohan received a copy of Vernon WAGNER's Death Record from the Hamilton County Coroner's Office, which showed the cause of death was from combined toxic effects of fentanyl, cocaine, and ethanol.

13. On August 20, 2019, agents conducted a fifth undercover drug purchase from COLLINS. Prior to the deal, surveillance was again established on 860 Beecher Street and surveillance observed COLLINS outside, next to the entrance to his apartment. The CS placed a call to COLLINS and was directed to come over to his apartment. The transaction took place on the sidewalk in front of COLLINS address. The substance provided to the CS by COLLINS was sent to the Hamilton County Coroner's Office laboratory for analysis. **NOTE:** The final report from the Hamilton County Coroner's Office has not been completed.

14. On September 5, 2019, the HCTF conducted surveillance on 860 Beecher Street prior to executing a search warrant on the residence and the arrest of COLLINS. At approximately 10:45am, COLLINS was observed exiting his residence in his electric

wheel chair and go to the Shell Gas Station on the coroner of Beecher Street and Gilbert Avenue. COLLINS was stopped on the gas station lot and taken into custody. COLLINS had in his possession the above listed Apple iPhone, which he acknowledged was his cellular telephone and gave the number for the telephone as (513) 410-3137.

15. Based upon the facts outlined above, I believe that Larry COLLINS is a drug dealer that supplies heroin/fentanyl and other illicit drugs to individuals in the Cincinnati, OH area. I believe COLLINS utilizes cellular telephones to conduct his illicit drug trafficking activities. I further believe, based upon the above listed information that probable cause exists to show that COLLINS utilizes the above described cellular telephone in furtherance of his illegal drug trafficking activities. I believe, based upon my training and experience that a Search Warrant on the cellular telephone seized from COLLINS is necessary. It is your affiant's belief that items of evidentiary value pertaining to illegal drug trafficking are located inside the above described cellular telephone device.

Mark Bohan
Task Force Officer
Hamilton County Heroin Task Force

Sworn before me, this 8th day of October, 2019.

Honorable Stephanie K. Bowman
U.S. Magistrate Judge
Southern District of Ohio